UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ENESCO GROUP, INC., | ) | No. 07 B 565 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

### MEMORANDUM OPINION

This matter is before the court for ruling on the motion of David R. Brown ("Brown"), chapter 7 trustee, to enforce his settlement agreement with the United States of America (the "United States") resolving an adversary proceeding in this case. For the reasons that follow, the motion will be granted.

### 1. Jurisdiction

This court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). Brown's claim against the United States was "related to" the bankruptcy case and so was a non-core matter, *see Brown v. Campanaro (In re Enesco Grp., Inc.)*, 07 B 565, 11 A 402, 2013 WL 4045756, at *5-6 (Bankr. N.D. Ill. Aug. 8, 2013), but the United States consented in its answer to the bankruptcy court's entry of final judgment (Adv. Dkt. No. 166, ¶ 6).

Federal courts have authority to enforce settlement agreements if there is an independent jurisdictional basis to do so. *Holmes v. Potter*, 552 F.3d 536, 538 (7th Cir. 2008); *In re Garrett*, 494 B.R. 336, 341 (Bankr. N.D. Ill. 2013). Among other things, a federal court has jurisdiction to enforce a settlement reached in an action if the action is still pending. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995); *Garrett*, 494 B.R. at 341. Here, the court had jurisdiction over the

adversary proceeding that the settlement agreement resolved, and the adversary proceeding is still pending. The court therefore has jurisdiction to enforce the settlement agreement for the same reason it had jurisdiction over the adversary proceeding itself, *see Garrett*, 494 B.R. at 341, and because there is consent the court can enter a final order.

## 2. Facts

The facts are drawn primarily from the parties' papers. Additional background facts come from two earlier rulings in the adversary proceeding, *see Brown*, 2013 WL 4045756; (Adv. Dkt. No. 160), and from bankruptcy court records of which the court can take judicial notice, *see In re Brent*, 458 B.R. 444, 455 n. 5 (Bankr. N.D. Ill. 2011) (noting that a court can take judicial notice of its own records). No facts are in dispute.

### a. The Bankruptcy Cases and the Adversary Proceeding

On January 12, 2007, three related businesses – Enesco Group, Inc. ("Enesco"), Gregg Manufacturing, Inc., and Enesco International Ltd. (collectively, the "debtors") – filed chapter 11 bankruptcy cases that were immediately ordered jointly administered.

Shortly after the cases were filed, the debtors sought and received approval under section 327(a) of the Bankruptcy Code to employ bankruptcy counsel and accountants. The debtors employed Shaw Gussis Fishman Glantz Wolfson & Towbin, LLC ("Shaw Gussis") as counsel to advise them on their rights, powers, and duties as debtors-in-possession. They also retained Deloitte Tax LLP ("Deloitte Tax") as accountants to assist them in preparing federal income tax returns and other tax-related filings.

The Internal Revenue Service filed a proof of claim in the Enesco case asserting a $4.8

million claim based primarily on Enesco's 1982-85 income taxes assessed in 2007 (the "IRS Claim"). The debtors and the IRS engaged in negotiations over the IRS Claim, the largest claim in the case, in an effort to reach a consensual plan of reorganization. But the negotiations proved unsuccessful, and in July 2008 the cases were converted to chapter 7 and later consolidated. David Brown was appointed chapter 7 trustee.

After his appointment, Brown received notices from the IRS that while the case was a chapter 11 case, Enesco had failed to file a Form 5471 (Information Return of U.S. Persons with Respect to Certain Foreign Corporations) required for the 2006 and 2007 years for each of the eighteen foreign subsidiary corporations in which Enesco held interests. For Enesco's failure the IRS assessed a total of $360,000 in mandatory penalties under I.R.C. § 6038(b)(1). Brown asked the IRS to waive the penalties, arguing that Enesco's failure to file the Forms 5471 should be excused because Enesco had relied on the professional advice of Shaw Gussis and Deloitte Tax. The IRS rejected the waiver request, and Brown paid the penalties out of estate funds.

In February 2011, Brown filed a single-count adversary complaint for damages against eight of Enesco's former officers and directors (collectively, the "Directors") alleging that they had breached their fiduciary duties in failing to file the Forms 5471. Brown later amended his complaint to add breach of contract and professional malpractice claims against Shaw Gussis and Deloitte Tax. He also added a claim against the United States seeking a refund of the penalties.

The United States moved to dismiss the refund claim for lack of subject matter jurisdiction. The motion was granted and the claim dismissed because Brown had not sufficiently pled the jurisdictional prerequisites for adjudicating a refund claim in the bankruptcy court. *See Enesco*, 2013 WL 4045756 at *9. He was given leave to supplement the amended

complaint under Rule 15(d), Fed. R.Civ. P. 15(d) (made applicable by Fed. R. Bankr. P. 7015), with the necessary allegations and filed a third amended complaint that did so. The United States then moved to dismiss Brown's refund claim under Rule 12(b)(6). That motion was denied. (*See* Adv. Dkt. No. 160).

Meanwhile, the other defendants – the Directors, Shaw Gussis, and Deloitte Tax – pursued their own motion practice. Shaw Gussis and Deloitte Tax each moved to dismiss Brown's claims against them under Rule 12(b)(6). (*Id.* Nos. 46, 63). Deloitte Tax moved to dismiss a cross-claim Shaw Gussis had asserted against it. (*Id.* Nos. 136, 178). The Directors moved for summary judgment on Brown's claims against them. (*Id.* No. 174).

Some of these motions have been ruled on. Others have not – because in late 2014, Brown and the defendants (including the United States) reached a global settlement of the many claims asserted among them.

### b. The Settlement

The basic form of the settlement was straightforward: in exchange for specified payments to Brown, he would dismiss the adversary proceeding, and the parties would (with limited exceptions) release their claims against each other.

The specific terms of the settlement were set out in a written agreement that all parties signed. (Brown Mot. Ex. 1). The critical paragraph here, entitled "Payment and Timing of Payment," provided in part:

> Deloitte Tax, Shaw Gussis, and [the Directors] shall pay the Trustee the total sum of $200,000 via cashier's or certified checks (divided among them and in the amounts that they have agreed separately, confidentially and among themselves) within five (5) business days of the Effective Date [defined as the date the order

>approving the settlement becomes a final order and the period to
>appeal has expired]. The USA shall make a payment to the Estate
>in the amount of $50,000 within sixty (60) days of the Effective
>Date. Thereafter, if the Trustee does not receive payment from the
>USA before the 60 day time period, the Trustee will be entitled to
>the overpayment interest rate, pursuant to 26 U.S.C. § 6621(1),
>from [the] 60th day after the Effective Date. In total, the Trustee
>will receive $250,000 (the "Settlement Payment") from [Shaw
>Gussis, Deloitte Tax, the Directors, and the United States].

(*Id.* at 4, ¶ 5). The parties agreed that two days after Brown's "receipt of the Settlement Payments" they would submit "an agreed order dismissing the [adversary proceeding] with prejudice." (*Id.* at 5, ¶ 8(b)).

On the settlement's effective date and after "receipt of the Settlement Payments set forth in Paragraph 5," Brown agreed on behalf of Enesco and the bankruptcy estate to release claims against Shaw Gussis, Deloitte, the Directors, and the United States. (*Id.* at 4, ¶ 6). Shaw Gussis, Deloitte, the Directors, and the United States in turn agreed to release their claims against Brown and Enesco. (*Id.* at 5, ¶ 6(b)). The United States, however, held back on the IRS Claim, agreeing to release only its "claims, cross-claims and counterclaims related to" the adversary proceeding, "including the claims by and between Enesco and the USA." (*Id.* at 2-3, ¶ 2(b); *id.* at 5, ¶ 6(b)).

In November 2014, Brown moved in the bankruptcy case under Bankruptcy Rule 9019(a), Fed. R. Bankr. P. 9019(a), to have the court approve the settlement. The motion described the settlement as calling for "an immediate cash payment" (Bankr. Dkt. No. 758 at ¶ 9) and requiring the defendants to "pay the Bankruptcy Estate the total sum of $250,000" (*id.* at ¶ 5). That sum, the motion said, would represent "a recovery of nearly 70% of the funds paid to the United States of America as penalties." (*Id.* at ¶ 10). Brown emphasized that approval of the settlement would avoid contentious, protracted, and costly litigation. (*Id.* at ¶¶ 9-11).

Notice of the hearing on the motion was sent to creditors, including the United States. (*Id.* No. 759). No objections were raised, and on December 1, 2014, the motion was granted and the settlement approved.

Although Brown suggests an earlier date, the effective date of the settlement was December 15, 2014.[1] Payment from the United States was accordingly due within 60 days, or no later than February 13, 2015. In late January 2015, however, counsel for the United States notified Brown's counsel that the Internal Revenue Service had elected to give Enesco a $50,000 credit, setting off that amount against Enesco's outstanding tax liabilities rather than paying $50,000 to Brown. (U.S. Resp. at 3-4). It appears the United States may have already given the credit. (*Id.*).

Brown now moves to enforce the settlement agreement, arguing that the agreement called for a cash payment, not a tax credit. The United States disagrees, contending that the Internal Revenue Code equates payments and credits and conferred the right to give a credit rather than pay in cash.

### 3. Discussion

Brown has the better of the argument. The settlement agreement plainly called for the delivery of money or its equivalent. It did not permit the United States to credit the settlement payment against Enesco's previous years' tax liabilities. The settlement agreement governs,

---

[1] Brown asserts in his motion that the effective date was December 11, 2014. He appears to arrive at that date by counting from the date the order approving the settlement was signed: November 26, 2014. But the effective date was the date when the time to appeal had passed, and the 14-day appeal period runs from the date of a final order's "entry," Fed. R. Bankr. P. 8002(a)(1), meaning its entry on the docket, Fed. R. Civ. P. 58(c) (made applicable by Fed. R. Bankr. P. 7058). Although the order approving the settlement was signed on November 26, it was not entered until December 1. (Bankr. Dkt. No. 763).

notwithstanding the statutory right the United States would have in its absence. The motion will be granted and the settlement agreement enforced.

A settlement agreement is simply a species of contract. *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996). When a settlement agreement is reached in federal litigation, state law governs its "formation, construction, and enforcement." *Magallanes v. Illinois Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008); *Dillard v. Starcon Int'l*, 483 F.3d 502, 506 (7th Cir. 2007); *see also Lou Bachrodt Chevrolet Co. v. General Motors LLC*, No. 12 C 7998, 2013 WL 3754833, at *2-3 (N.D. Ill. July 15, 2013) (observing that a dispute over the terms of a settlement agreement, "a species of private contract," is "a dispute under state contract law"). This is equally true of settlement agreements reached in bankruptcy cases. *In re Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995).[2]

As for which state's law applies, the settlement agreement here has no choice-of-law provision, and neither Brown nor the United States addresses the question. When neither party suggests that the law of a state other than the forum state should apply, the forum state's law applies by default. *Brunswick Leasing Corp. v. Wisconsin Cent., Ltd.*, 136 F.3d 521, 525-26 (7th Cir. 1998); *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995); *Glazer v. Abercrombie & Kent, Inc.*, 07 C 2284, 2008 WL 4372032, at *2 (N.D. Ill. Sept. 23, 2008). Illinois contract law therefore governs the dispute here.

Under Illinois law, an agreement will be enforced if its terms are reasonably definite and

---

[2] Whether federal or state law applies probably makes no difference because "'[f]ederal common law rules of contract interpretation parallel equivalent state rules.'" *Bullwinkel v. New Eng. Mut. Life Ins. Co.*, 18 F.3d 429, 431 (7th Cir. 1994) (quoting *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1358 (7th Cir. 1993)).

certain. *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 564 (7th Cir. 2012). An agreement is definite enough to be enforced if the court, employing proper rules of construction, can tell from the agreement's terms what the parties agreed to do. *Robin v. Robin*, No. 02 C 8181, 2004 WL 170318, at *6 (N.D. Ill. Jan. 21, 2004); *Opper v. Brotz*, 277 Ill.App.3d 1024, 1026, 661 N.E.2d 1159, 1161 (3d Dist. 1996) (enforcing a settlement agreement because "its material terms [were] clear, certain, and definite" even though the agreement failed to specify some procedural details).

In determining the parties' intent, always the primary objective, Illinois courts look to the plain language of the contract itself and do not venture beyond the contract's four corners in the absence of some ambiguity. *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (2011); *Gallagher v. Lenart*, 226 Ill. 2d 208, 233, 874 N.E.2d 43, 58 (2007). The contract is construed as a whole, with each part viewed in light of the others. *Thompson*, 241 Ill. 2d at 441, 948 N.E.2d at 47; *Gallagher*, 226 Ill. 2d at 233, 874 N.E.2d at 58. If the words in the contract are clear, they are given "their plain, ordinary and popular meaning," *Thompson*, 241 Ill. 2d at 441, 948 N.E.2d at 47, and undefined terms are generally assigned the meaning found in the dictionary, *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 453 (7th Cir. 2012) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 115-16, 607 N.E.2d 1204, 1215-16 (1992)).

The unambiguous terms of the settlement agreement here show that the United States committed to make a monetary payment, not give a credit against past tax liabilities. The settlement agreement's paragraph headed "Payment and Timing of Payment" obligated Deloitte, Shaw Gussis, and the Directors to "pay" Brown $200,000. (Brown Mot. Ex. 1 at 4, ¶ 5). The same paragraph required the United States to "make a payment . . . in the amount of $50,000." (*Id.*). If Brown did not "receive payment" from the United States in 60 days, he would be

<mark>
<mark>
</mark>
</mark>
<mark>
</mark>
<mark>
</mark>

entitled to interest at the overpayment rate. (*Id.*). In total, the paragraph said, Brown would receive "$250,000," defined as the "Settlement Payment." (*Id.*). Only after Brown received the payment would the adversary proceeding be dismissed. (*Id.* at 5, ¶ 8(b)). At no point did the settlement agreement mention the possibility that the United States would fulfill its obligations other than by paying money.

The settlement agreement did not define the term "payment," but its ordinary meaning is clear. A "payment" is "the delivery of money or its equivalent to the person to whom it is due in satisfaction of an obligation." *American Standard Ins. Co. v. Basbagill*, 333 Ill. App. 3d 11, 16, 775 N.E.2d 255, 260 (2d Dist. 2002) (emphasis omitted); *see also Pekin Life Ins. Co. v. Schmid Family Irrevocable Trust*, 359 Ill. App. 3d 674, 682, 834 N.E.2d 531, 537 (1st Dist. 2005). If a contract neglects to spell out the medium of payment, it is cash. *Margulus v. Mathes*, 339 Ill. App. 497, 500, 90 N.E.2d 254, 256 (4th Dist. 1950). Unless the parties expressly agree, cross-demands between them cannot operate or be treated as a payment. *Meyer v. Johnson*, 122 Ill. App. 87, 90 (2d Dist. 1905); *see also* 60 Am. Jur. 2d *Payment* § 17 at 729 (2014) (noting that "[i]n the absence of agreement or consent, there is no right to pay by the transfer of debits or credits or the application of the debt on a demand of another party").

The settlement agreement, then, unambiguously required the United States to make a payment of $50,000 to Brown. Nowhere did the agreement entitle the United States to give Brown a credit against Enesco's tax liabilities. The word "credit" never even appears.

The result would be the same if the settlement agreement were somehow ambiguous. When a contract is ambiguous, extrinsic evidence can be examined to determine the parties' intent. *Thompson*, 241 Ill. 2d at 441, 948 N.E.2d at 47; *Gallagher*, 226 Ill. 2d at 233, 874 N.E.2d

at 58. Extrinsic evidence here supports the conclusion that the United States agreed to pay money, not give a credit. The parties' negotiations were extensive, and an earlier draft of the settlement agreement called for all defendants, including the United States, to pay by cashiers or certified check. (U.S. Resp. at 2). That requirement was changed for the United States, however, when counsel represented that the United States would be unable to pay with a cashiers or certified check. (*Id.* at 3). The time for the United States to pay was also extended to sixty days when counsel asserted that the United States needed more time to make the payment. (*Id.*). Counsel for the United States later admitted that during the negotiations over the settlement agreement he was unaware the IRS might give a credit rather than make a payment. (*Id.* at 4).

In his motion to approve the settlement, Brown described the "Settlement Payment" as "an immediate cash payment of $250,000" and touted the fact that significant funds were coming into the estate, roughly 70% of the potential refund. (*See* Bankr. Dkt. No. 758). The United States agreed in the settlement agreement to support that motion (Brown Mot. Ex. 1 at 5, ¶ 7(b)) and did not quarrel with Brown's characterization of the Settlement Payment as a cash payment. Under Illinois law, "the behavior of parties to a contract is a good guide to interpretation." *Vendetti v. Compass Envtl., Inc.*, 559 F.3d 731, 735 (7th Cir. 2009); *see also Chicago & N.W. Ry. v. Peoria & Pekin Union Ry.*, 46 Ill. App. 3d 95, 101, 360 N.E.2d 404, 407 (3d Dist. 1977) (noting that the parties' action "under the contract is often the strongest evidence of their intended meaning").

Whether the settlement agreement is taken purely on its face, then, or whether extrinsic evidence is considered, the only reasonable interpretation is that the United States agreed to pay $50,000 to Brown, not give the estate a $50,000 credit against Enesco's past tax liabilities.

The United States argues, however, that it had a statutory right under the Internal Revenue Code to satisfy its obligations under the settlement agreement by issuing a credit rather than make a payment. According to the United States, I.R.C. § 6402(a) gives it that right, and the statute was implicitly if not explicitly made part of the agreement.

The United States is mistaken. Section 6402(a) provides:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, . . . refund any balance to such person.

I.R.C. § 6402(a). Section 6402 allows the United States the option of crediting an overpayment of taxes against the taxpayer's tax liability. *Jones v. IRS (In re Jones)*, 359 B.R. 837, 841 (Bankr. M.D. Ga. 2006). Any remaining balance is refunded to the taxpayer. *Id.* Whether to exercise the option is up to the government. *Pettibone Corp. v. United States*, 34 F.3d 536, 538 (7th Cir. 1994).

Assuming section 6402(a) applies at all,[3] the statute was not an implied part of the settlement agreement because the agreement's terms were inconsistent with the option that section 6402(a) grants. True, Illinois courts consider "laws and statutes in existence at the time a contract is executed as part of the contract as though they were expressly incorporated therein."

---

[3]   That it does is not obvious. Section 6402(a) applies "in the case of any overpayment" of taxes. I.R.C. § 6402(a). The Internal Revenue Code does not define overpayment, but "the common sense interpretation is that a tax is overpaid when a taxpayer pays more than is owed . . . ." *In re Borgman*, 698 F.3d 1255, 1260 (10th Cir. 2012) (internal quotation omitted). Brown's refund claim in the adversary proceeding was not based on an overpayment of the penalties for the estate's failure to file the Forms 5471. Far from conceding that some portion of the penalties was proper, Brown took the position that the estate owed *no* penalties (since there was reasonable cause for not filing the Forms) and was entitled to have *all* the penalties refunded.

*McMahon v. Chicago Mercantile Exch.*, 221 Ill. App. 3d 935, 945, 582 N.E.2d 1313, 1319 (1st Dist. 1991); *see also Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011); *Selcke v. New Eng. Ins. Co.*, 995 F.2d 688, 689 (7th Cir. 1993). These laws and statutes "become implied terms of the contract as a matter of law." *McMahon*, 221 Ill. App. 3d at 945, 582 N.E.2d at 1319; *see also Selcke*, 995 F.2d at 689 (noting that statutes are a source of implied contractual terms . . . .").

But nothing prevents the parties from excluding a statute from their contract or modifying its effects. *Illinois Bankers' Life Ass'n v. Collins*, 341 Ill. 548, 553, 173 N.E. 465, 467 (1930); *Jewelers Mut. Ins. Co. v. Firstar Bank Ill.*, 341 Ill. App. 3d 14, 18-19, 792 N.E.2d 1, 5 (1st Dist. 2003); *McMahon*, 221 Ill. App. 3d at 945, 582 N.E.2d at 1319; *see also Selcke*, 995 F.2d at 690 (observing that statutes are implied contractual terms the parties are free to "vary if they want but that govern otherwise"). If they do, the statute will not be implied as a contract term. *McMahon*, 221 Ill. App. 3d at 945, 582 N.E.2d at 1319.

The settlement agreement here modified any applicable effect of section 6402(a). Under the settlement agreement's plain terms, the United States agreed to pay $50,000 by a date certain and also agreed to pay interest if the payment was not made. On receipt of the payment (as well as the payments from the other defendants), Brown agreed in turn to dismiss the adversary proceeding. The settlement agreement did not provide that the United States could satisfy its obligations by exercising its crediting option under section 6402(a). There was no mention of the possibility of a "credit," and the statute was never cited. By agreeing to pay the $50,000 and waive any claims, cross-claims, and counterclaims, the United States effectively elected not to exercise its rights under section 6402, taking the statute out of play.

In support of its implied term argument, the United States relies heavily on *Lowen Corp.*

*v. United States*, No. 97-1553-WEB, 1999 WL 1253022 (D. Kan. Nov. 5, 1999). In *Lowen*, the court allowed the United States to credit against a taxpayer's past tax liability a payment the United States owed the taxpayer under a settlement agreement.

But *Lowen* is no help to the United States here. That case concerned an overpayment of interest. The settlement agreement expressly provided that the amount of the taxpayer's overpayment was $55,000 and also provided that "'under Section 6402 of the Internal Revenue Code, the overpayment resulting from this settlement may be credited against certain outstanding liabilities of the taxpayer, including liability for an internal revenue tax.'" *Id.* at *2. This provision made it easy for the court to find the parties intended to allow the United States its statutory option of crediting the settlement payment against the taxpayer's tax liabilities. *Id.* at *3 (observing that "the court cannot find in this case that the settlement agreement negated the IRS's statutory right to credit the settlement payment against Lowen's other asserted tax liabilities"). The settlement agreement here contains no comparable provision reserving rights under section 6402(a).

The final matter is Brown's request for an award of the attorneys' fees and costs he incurred in enforcing the settlement agreement. Paragraph 20 of the settlement agreement provides:

> In the event legal or other action is required to enforce any Party's rights hereunder, the Party not complying with the terms of the Settlement Agreement shall pay the party forced to enforce its rights hereunder its reasonable attorneys' fees and other related costs and expenses incurred in connection with such enforcement.

(Brown Mot. Ex. 1 at 8, ¶ 20). The United States has not complied with the terms of the settlement agreement, and Brown has been required to enforce his rights under it. Brown is

therefore entitled to his reasonable attorney's fees and costs. He may prove his attorney's fees and costs by affidavit with supporting invoices attached.

### 4. Conclusion

For these reasons, the motion of chapter 7 trustee David R. Brown to enforce his settlement agreement with defendant United States of America is granted.[4/] Brown is awarded his reasonable attorney's fees and costs incurred in enforcing the settlement agreement. A separate order will be entered consistent with this opinion.

Dated: September 2, 2015

                                              A. Benjamin Goldgar
                                              United States Bankruptcy Judge

---

[4/]    Because the settlement agreement is enforced, Brown's alternative request to subordinate the IRS Claim under section 510 of the Bankruptcy Code need not be addressed.

-14-